Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO VALLE SANTA CECILIA<br><br>Peticionaria<br><br>v.<br><br>TRIPLE S PROPIEDAD INC.; ABC ADJUSTERS; XYZ CORP.; Y OTROS<br><br>Recurrida | TA2026CE00758 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de CAGUAS<br><br>Caso Núm.: CG2019CV03554<br><br>Sobre: Daños y otros |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Mateu Meléndez, Jueza ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2026.

El 12 de junio de 2026, el Consejo de Titulares del Condominio Valle Santa Cecilia (Consejo, CVSC o parte peticionaria) instó ante nos el recurso de *certiorari* de epígrafe. Mediante este, nos solicita la revisión y revocación de la *Resolución* dictada y notificada el 14 de mayo del año en curso por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario). Allí, el TPI declaró Ha Lugar la *Oposición a Solicitud de Sentencia Sumaria* presentada en el caso por Municipal Claims Management Services, Inc. (MCMS o recurrida) y por los fundamentos en dicho escrito expuestos, en consecuencia, declaró No Ha Lugar la *Moción Solicitando Sentencia Sumaria a favor de la parte demandante y en contra de parte interventora* instada por la peticionaria el 26 de febrero de 2026.[1]

---
[1] Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC TPI), Entrada Núm. 409.

Ese mismo día, el Consejo presentó una *Moción en auxilio de jurisdicción* en la que nos solicitó que ordenáramos la suspensión de la orden recurrida mientras consideramos y resolvemos el auto instado por ella.

Evaluado el legajo apelativo, expedimos el auto de *certiorari* solicitado y revocamos la decisión recurrida. Veamos.

-I-

La causa de epígrafe comenzó cuando el 19 de septiembre de 2019, el Consejo presentó una *Demanda* contra Triple S Propiedad (Triple S) por los daños sufridos por la parte peticionaria como consecuencia de los huracanes Irma y María. En síntesis, en su *Demanda,* reclamó que la Triple S se negó injustificadamente a concluir que su reclamación estaba cubierta bajo la póliza de seguro vigente al momento de los hechos expedida por la aseguradora. También, se alegó que esta subvaloró los daños reclamados y excluyó otros para pagar menos de lo que corresponde que pague. Las causas de acción incluidas fueron: incumplimiento de contrato, daños y perjuicios por incumplimiento de contrato y mala fe y honorarios de abogado por temeridad y mala fe.[2]

El 6 de noviembre de 2019 Triple S presentó *Contestación a Demanda y Reconvención.* Allí, al contestar la demanda Triple S negó la mayoría de las alegaciones y afirmativamente adujo que la peticionaria dilató el proceso de la reclamación al no responder a la contraoferta de Triple-S y sometió la misma a un proceso de "*appraisal*" viciado y fraudulento, donde se proveyó un nuevo estimado sobrevalorado, con falsas representaciones y prueba de pérdida fraudulenta y harto excesivo, violentando los términos y condiciones de la Póliza y el Código de Seguros. También le imputó que incumplió con los requerimientos de buena fe de nuestro ordenamiento, el Código de Seguros y la jurisprudencia y no ha cumplido con los requisitos impuestos por el Artículo 27.164 del Código de Seguros de Puerto Rico, 26

---

[2] Entrada Núm. 1.

LPRA sec. 2716 y la Oficina del Comisionado de Seguros en cuanto a la presentación de acciones civiles contra aseguradoras.

En cuanto a la reconvención, Triple S reclamó que la cubierta emitida en favor del Consejo era nula en su totalidad por fraude y/o falsas representaciones atribuibles al Consejo. En la alternativa, adujo que procedía que el tribunal dictara sentencia en la que declarara (1) los derechos que tiene un asegurador y su representación legal a participar en todo el proceso de "*appraisal*" – incluyendo la selección del árbitro, reuniones, inspecciones, acceso a información, documentos y comunicaciones intercambiados y sometidos, (2) los límites que tiene un tasador "*appraiser*" de tomar decisiones sin el consentimiento de las partes involucradas, y (3) el estado de derecho en torno a la confidencialidad y privilegio del proceso, confidencialidad que no se extiende a las propias partes del proceso, la sumisión de nuevas reclamaciones nunca sometidas previamente al asegurador, el pago de honorarios del árbitro por un tasador "*appraiser*" de su propio pecunio, y el cobro de honorarios del árbitro por adelantado.[3]

En lo concerniente a la controversia que hoy atendemos, es importante mencionar que el 29 de abril de 2020, el Consejo presentó *Moción en solicitud de confirmación de Laudo por unanimidad,* en la que sometió para consideración y adjudicación el Laudo o acuerdo de ajuste de tasación final al que por unanimidad llegaron las partes en torno a los daños que sufrió por causa del Huracán María la parte compareciente. Según allí se consignó, el Panel de Tasador constituido, acordó por unanimidad adjudicarle al Consejo dos millones novecientos cincuenta y un mil ciento cuarenta y ocho dólares con cincuenta centavos ($2,951,148.50) en concepto de daños

---

[3] *Íd.*, Entrada Núm. 5.

sufridos en o alrededor del 20 de septiembre de 2017 en relación con la Póliza Núm. 81084682 emitida por Triple S.[4]

Igual de relevante es consignar que el 26 de diciembre de 2023, MCMS sometió *Comparecencia especial e intervención limitada en protección de los intereses propietarios de Municipal Claims Management Services, Inc.* En este escrito, informó que fue contratada por el Consejo como Tasador de los daños experimentados en su propiedad. De igual forma, indicó que de conformidad con los términos del *Appraisal Contract* firmado con el Consejo, se fijó un máximo del 10% de la cuantía de daños establecida en el "Appraisal Award". También, manifestó que el Consejo se obligó a pagar los costos y gastos incurridos por MCMS en la prestación de los servicios y acordó pagarle los honorarios dentro de los cinco (5) días siguientes a la presentación de la Factura por los servicios prestados por la compareciente en virtud del acuerdo. Señaló MCMS que habiéndose remitido factura al Consejo el 8 de abril de 2020, ascendente a $389,945.50, este no ha satisfecho la cantidad adeudada, pese a haberse efectuado numerosas gestiones de cobro. Así pues, expuso que Triple S tenía la obligación de retener la cuantía que el Consejo le adeudada de aquella cantidad que fuera a desembolsar al amparo de la póliza, lo que le fue notificado a la aseguradora mediante comunicación del 8 de agosto de 2022.[5]

En reacción a la comparecencia de MCMS, el 28 de diciembre de 2023, Triple S presentó *Demanda en solicitud de sentencia declaratoria y para obligar a reclamantes adversos a litigar entre sí.* Mientras tanto, el 21 de enero de 2024, el Consejo sometió *Urgente moción en oposición a intervención limitada de Municipal Claims Management Services, Inc.*[6] Mediante *Resolución* dictada el 1 de febrero de 2024, el TPI declaró No Ha Lugar la solicitud de sentencia declaratoria instada por Triple S. De la misma manera, ese mismo día el

---

[4] *Íd.*, Entrada Núm. 86.
[5] *Íd.*, Entrada Núm. 276.
[6] *Íd.*, Entradas 277 y 280.

foro primario también denegó la solicitud de intervención limitada presentada por MCMS.[7] Estas dos decisiones fueron dejadas sin efecto por este Tribunal de Apelaciones mediante las respectivas sentencias dictadas en los casos KLCE202400628 y KLCE202400670.[8]

Tras varios incidentes que no son necesarios detallar, el 26 de febrero de 2026, el Consejo sometió *Moción solicitando sentencia sumaria a favor de parte demandante y en contra de parte interventora*. Allí, mencionó que el señor Enrique Henry Rodríguez y su compañía, MCMS fueron contratados por este para evaluar nuevamente la propiedad y preparar un nuevo estimado de daños bajo un contrato que adolece de nulidades esenciales. Por ello, la peticionaria solicitó que se dictara sentencia sumaria en cuanto a las reclamaciones de cobro de dinero y ejecución de cesión de pagos instada por MCMS.[9]

En su escrito, el Consejo identificó las cuatro controversias que conforme el mandato del Tribunal de Apelaciones, restaban por determinar en el pleito. Estas eran:

1. ¿Es el contrato de MCMS con CVSC uno válido en derecho y cumple con las formalidades de ley?

2. ¿Tenía MCMS y/o en su defecto Henry Rodríguez que tener licencias válidas para poder llevar a cabo el ajuste o la valorización de seguros conforme lo que requería el contrato suscrito el 20 de agosto de 2019?

3. ¿Precisaba que ese contrato de servicios con MCMS se hubiera enmendado con el cambio de la Ley 129-2020?

4. De ser válido el contrato de "Appraisal Contract" entre MCMS y CVSC, ¿existe a la fecha una deuda vencida, líquida y exigible?

A su vez, enunció que los siguientes hechos materiales estaban admitidos o incuestionados:

1. CVSC era el asegurado bajo la póliza de seguro comercial de propiedad núm. 30-CP-81084682-2 emitida por TRIPLE-S PROPIEDAD, INC., con vigencia al momento del paso del huracán María el 20 de septiembre de 2017, respecto a la propiedad ubicada en Ave. Espíritu Santo, Caguas, Puerto Rico.

---

[7] *Íd.*, Entradas 282 y 283.
[8] *Íd.*, Entradas Núm. 318 y 319.
[9] *Íd.*, Entrada Núm. 370.

2. El 20 de agosto de 2019, CVSC y MCMS suscribieron un documento titulado "APPRAISAL CONTRACT". Ver anejo.

3. El referido contrato que fue uno de adhesión establece tarifas por hora para distintos roles (Named Appraiser $350/hr, Engineer Expert/Consultant $250/hr, Field Technician $95/hr, Administrative $50/hr. Luego con una enmienda de la misma fecha del 19 de agosto de 2020 donde claramente MCMS establece:

Municipal Claims Management Services Inc. **will advance all advance for everything associated** with appraisal and cap fees at 10%. **The reimbursement will be due upon de receive of the appraisal check**. (Énfasis nuestro).

4. Por tanto el pago del contrato estaba sujeto al pago del cheque del ajuste hecho bajo el laudo al asegurado.

5. MCMS reconoce que representó al Consejo "en el proceso de Appraisal", que el proceso culminó con un "Appraisal Award" de fecha 7 de abril de 2020, firmado por el tasador del asegurado, el tasador del asegurador y el umpire, fijando un Total Award Amount de $3,777,533.35 y un ACV Amount of Loss de $2,951,148.50.

6. Aunque no se había recibido un cheque de ajuste CVSC el 8 de abril de 2020, MCMS emitió una factura titulada "SERVICES: ESTIMATE OF LOSS" en la que reclama: • "TOTAL RECOVERED: $3,777,533.35" • "TOTAL FEES: $389,945.50" • "EXPENSES: $6,375.00" • "AMOUNT DUE: $389,945.50"

7. Dicha factura de MCMS sin desglose de horas ni tareas realizadas, y señalando "Make payable to: Enrique Rodríguez" ni siquiera a la corporación interventora.

8. MCMS se presenta en este caso mediante "Comparecencia Especial e Intervención Limitada", alegando que:

   a) El Consejo le adeuda $389,945.50 por honorarios y gastos bajo el Appraisal Contract.
   b) El Consejo cedió irrevocablemente a MCMS "that portion of the insurance proceeds sufficient to pay MCMS's fee".
   c) TRIPLE-S debe retener y/o depositar en el Tribunal dicha suma de cualquier cuantía que pague al Consejo bajo la póliza.

9. En escrito de 25 de marzo de 2024 (Documento Principal 295), el Consejo dejó claro que:

   a) No reconoce una deuda vencida, líquida y exigible a favor de MCMS.
   b) Tras la vigencia de la Ley 129-2020, no existe contrato vigente que cumpla con dicha ley entre CVSC y MCMS.
   c) Nunca se presupuestó partida para MCMS conforme los artículos 52 y 58 de la Ley de Condominios de 2020, ni se aprobaron contratos válidos al amparo de dicha ley.

10. Consta en autos una declaración jurada del tesorero del Consejo afirmando que CVSC no tiene contrato vigente con MCMS conforme a la ley, ni reconoce la alegada deuda como vencida, líquida y exigible.

11. La Ley 129-2020 entró en vigor el 16 de agosto de 2020, después de la suscripción del *Appraisal Contract* (20 de agosto de 2019) y después de la emisión del *Appraisal Award* (7 de abril de 2020).

12. MCMS nunca solicitó renovación, ratificación ni adaptación del contrato tras la entrada en vigor de la Ley 129-2020.

13. MCMS no intervino formalmente en el litigio entre CVSC y Triple-S desde el 31 de julio de 2020 (cuando Triple-S alegó fraude) hasta el 26 de diciembre de 2023 (solicitud de intervención), un período de más de tres años.

14. El Tribunal de Apelaciones ordenó expresamente que el foro recurrido determine:

    (1) la validez del *Appraisal Contract*, y
    (2) la cuantía adeudada, si alguna.

15. Triple-S consignó los fondos transaccionales el 17 de octubre de 2024 (Entrada SUMAC 334).

16. En su contestación a interrogatorio el Sr. Henry Rodríguez admite que no contaba ni él ni la compañía con las licencias de ajustador para Puerto Rico. Ver contestación a interrogatorio adjunto de Henry Rodríguez. Citamos:

    The question is objected as drafted, as it is based on an erroneous premise and is irrelevant. Without waiving the objection, it is stated that Mr. Rodriguez and Municipal did not have adjuster licenses in Puerto Rico. It is added that they have never performed claims adjustment tasks or functions in Puerto Rico and that there is no legal requirement to obtain and possess an adjuster license to perform the tasks carried out pursuant to the contract with Consejo or any other client that Municipal had in Puerto Rico. The undersigned had an adjuster license - Puerto Rico Lic. # 3002089920 which is not currently active.

17. Estos hechos, mayormente afirmados por la propia MCMS o no disputados en sustancia, bastan para resolver como cuestión de derecho la inexigibilidad del contrato y de la supuesta cesión.

Basándose en los hechos antes enunciados, el Consejo argumentó que el *Appraisal Contract* es en derecho un contrato de ajustador público sujeto al Código de Seguros y que MCMS solo puede hacerlo valer si este cumple el régimen de licenciamiento y forma que exige el Código de Seguros. También, expuso que MCMS no ha probado cumplimiento con la licencia, ni el contrato regulado de ajustador público por lo que el contrato es contrario al ordenamiento público de seguros y, por ende, no es ejecutable contra el asegurado. Además, reclamó que el contrato contiene cláusulas que son incompatibles con la política pública de protección al asegurado en el Código de Seguros lo que refuerza su carácter nulo e

inexigible. Así, igualmente, señaló que el aludido contrato violentaba la Ley 129-2020 de Condominios, por lo que no puede pagarle con fondos comunes sin incurrir en violación a su propia ley especial, ello bastaba para negar la exigibilidad del contrato frente a CVSC.

De la misma manera, en su solicitud de sentencia sumaria el Consejo señaló que la alegada cesión irrevocable contenida en el contrato, no subsana la nulidad ni genera obligación directa en su contra. También, niega que la deuda sea líquida, vencida y exigible. De otra parte, reclamó una desproporción y onerosidad del cobro, sobre el cual hubo una inacción de parte de MCMS por tres años para reclamar formalmente la alegada deuda. Ante todos estos planteamientos, peticionó, entre otros remedios, que se dictara sentencia sumaria en la que se desestimara la intervención de MCMS en el pleito por ser improcedente en hecho y derecho, que le impusiera sanciones a dicha parte.[10]

Habiéndosele concedido prórroga a tales efectos, el 21 de abril de 2026, MCMS sometió su *Oposición a Solicitud de Sentencia Sumaria*.[11] Allí, aceptó que el Consejo era el asegurado bajo la póliza de seguro comercial de propiedad núm. 30-CP-81084682-2 emitida por Triple S, así como que el 20 de agosto de 2019, la peticionaria y MCMS suscribieron un *Appraisal Contract*. También, aceptó que las tarifas por horas expuestas por el Consejo eran las correctas, aunque señaló que la cita del Addendum que enmendó el contrato fue tergiversada. Admitió que se envió factura con fecha del 8 de abril de 2020, aunque reiteró que la premisa de que la deuda del Consejo era pagadera solo después de que se recibiera el pago de parte del asegurador era falsa. Igual aceptó que la Ley 129-2020 entró en vigor el 16

---

[10] Cabe destacar que con su escrito, el Consejo acompañó copia de los siguientes documentos: Acuerdo del 20 de agosto de 2019; Solicitud de *appraisal* ante OCS; Laudo suscrito no aprobado;  factura de 8 de abril de 2020; factura de 3 de junio de 2020; *Claim Time & Expense*; *Sentencia* emitida por el Tribunal de Apelaciones en el caso KLCE202400628; Juramento suscrito por el Sr. Jesús Domínguez Maldonado, tesorero del Consejo; y *Answer to Interrogatory and Request for Production of Documents* remitido al Consejo por MCMS.
[11] *Íd*., Entrada Núm. 382.

de agosto de 2020 y que nunca solicitó renovación, ratificación ni adaptación del contrato, pues dicho estatuto no era de aplicación retroactiva. Negó, además, que el pago del contrato estuviera sujeto al pago del cheque del ajuste hecho bajo el laudo y objetó el resto de las premisas.[12] El 22 de abril de 2026, el Consejo sometió dúplica a la oposición de MCMS a su solicitud de sentencia sumaria.[13]

Así las cosas, el 14 de mayo de este año, el foro primario dictó la *Resolución y Orden* recurrida. Esta lee como a continuación transcribimos:

> Examinados los escritos: "Moción Solicitando Sentencia Sumaria a Favor de Parte Demandante y en Contra de Parte Interventora", presentada el 26 de febrero de 2026, por la parte demandante por conducto de su representación legal y la "Oposición a Solicitud de Sentencia Sumaria", presentada el 21 de abril de 2026, por la parte interventora Municipal Claims Management Services Inc., por conducto de su representación legal, este Tribunal resuelve y emite Resolución:

> Por los fundamentos expuestos en la "Oposición a Solicitud de Sentencia Sumaria", este Tribunal la declara HA LUGAR.

> Se declara NO HA LUGAR la "Moción Solicitando Sentencia Sumaria a Favor de Parte Demandante y en Contra de Parte Interventora" presentada por la parte demandante.

> Por tanto, se ORDENA la continuación de los procedimientos.[14]

Por estar inconforme con dicha determinación, el Consejo instó el recurso de epígrafe en el que señaló que el foro primario se equivocó al declarar No Ha Lugar su moción de sentencia sumaria sin cumplir con el mandato expreso de la Regla 36.4 de Procedimiento Civil [*infra*] y sin exponer fundamentos adecuados que permitan una revisión apelativa efectiva, al omitir identificar los hechos esenciales y pertinentes incontrovertidos, los hechos materiales que permanecen en controversia y las bases jurídicas de su determinación. Como ya mencionamos, con su

---

[12] En apoyo a su escrito, MCMS sometió los siguientes documentos: Invoice MCMS 8 de abril de 2020, *Request for Appraisal, Signed Appraisal Contract* Valle Santa Cecilia, *Valle Santa Cecilia Statement* del 3 de junio de 2020, Carta a Triple S del 9 de agosto de 2022, *Sentencia* dictada en el caso KLCE202400628; Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, *Answer to Interrogatory* de MCMS al Consejo; *Registry of Corporation de Florida*; Certificación del Sr. Enrique Henry Rodríguez como *Certified Property Appraiser and Umpire*. Véase, SUMAC TPI, Entrada Núm. 382.
[13] *Íd.*, Entrada Núm. 384.
[14] *Íd.*, Entrada Núm. 409.

recurso el Consejo sometió una solicitud de auxilio que fue denegada por este Tribunal de Apelaciones mediante *Resolución* del 15 de junio de 2026. En la misma, además, le ordenamos a Triple S y a MCMS a comparecer dentro del plazo final a vencer el 23 de junio de 2026, haciéndole la advertencia de que, de no comparecer, procederíamos a resolver sin el beneficio de su comparecencia.

-II-

A.

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023) al citar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*. Ahora bien, en los procesos civiles, la expedición del recurso discreción de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V R 52.1. *Allio v. Santiago Chardon,* 2026 TSPR 13, 217 DPR ___ que establece que este se expedirá cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.[15]

---

[15] Además, y a modo de excepción, podremos revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos

De otro lado, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163 (2020).  Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[16]  Estos criterios, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Nuestro Más Alto foro ha establecido que como regla general no se interferirá con las facultades discrecionales de los foros primarios, excepto en aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.*, *supra,* a la pág. 210 y casos allí citados. En lo pertinente, se ha definido la discreción judicial como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Íd.,* al citar a *Bco. Popular de PR v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997). Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del Derecho. *Íd.*

*B.*

---

relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

[16] Así pues, según la citada regla, estos indicadores son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; o si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.  Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re. Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025).

El mecanismo procesal de la sentencia sumaria establecido por la Regla 36 de Procedimiento Civil, tiene el propósito principal de facilitar la solución justa, rápida y económica de los litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, resulta innecesaria la celebración de un juicio en su fondo. *Conklin v. Passalacqua*, 2026 TSPR 18, 217 DPR ____; *Negrón Castro y otros v. Soler Bernardini, et al.*, 2025 TSPR 96, 216 DPR ___, al citar a *BPPR v. Zorrilla y otro,* 214 DPR 329, 338 (2024). El discutido mecanismo emana de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, y permite que cualquiera de las partes en un litigio solicite que el tribunal dicte sentencia por la vía sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Sólo procede dictar sentencia sumaria cuando surge de manera clara que la parte promovida por la solicitud no prevalecerá bajo ningún supuesto de hechos. *Conklin v. Passalacqua*, *supra,* al mencionar a *Nieves Díaz v. González* Massas, 178 DPR 820, 848 (2010). Esto, pues si hay una disputa real y sustancial sobre la existencia de algún hecho material, el tribunal se debe apartar de la adjudicación sumaria. *Íd.*[17] Así pues, una moción de sentencia sumaria no procederá cuando: (1) existan controversias de hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) no proceda como cuestión de derecho. *Íd.*

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, establece el contenido y los requisitos de forma que deben observarse, tanto en la solicitud de sentencia sumaria presentada por la parte promovente, como en la oposición que pueda presentar la parte promovida. *León Torres v. Rivera Lebrón*, 204 DPR 20, 43 (2020). Así pues, conforme el inciso (e) de la

---

[17] A tales efectos, se consideran hechos materiales aquellos que potencialmente puedan afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Conklin v. Passalacqua*, *supra*, al citar a *Bobé et al. v. UBS Financial Services*, 198 DPR 6 (2017).

aludida regla, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, más las declaraciones juradas y cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y pertinente.[18] Para que un tribunal dicte sentencia sumaria a favor del promovente, ésta deberá, además, justificarse por el derecho aplicable. *CSM v. ELA*, 2025 TSPR 78, 216 DPR _____, al mencionar a *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023).

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Conklin v. Passalacqua*, *supra.* Al ser así, estamos llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias pautadas por la Regla 36.3 de Procedimiento Civil, *supra. Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020). Para ello, es indispensable que analicemos tanto los documentos que se acompañan con la solicitud como los documentos en oposición para determinar si existe o no controversia de hechos. Si se concluye que los hechos materiales están incontrovertidos, entonces corresponde revisar si el foro primario aplicó correctamente el derecho.   Claro está, debemos recordar que no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI, ni adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. *Meléndez González et al. v. M. Cuebas*, *supra,* pág. 118. Cabe destacar que, en el caso en que no existan hechos materiales en controversia, este Foro procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Negrón Castro y otros v. Soler Bernardini, et al.*, *supra,* al mencionar a *Fernández-Bernal v. RAD-MAN et al.*,

---

[18] 32 LPRA Ap. V, R. 36.3(e).

*supra*, pág. 338 y *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

Ahora bien, cabe destacar que para que se propicie adecuadamente la revisión judicial por nuestra parte, los tribunales de primera instancia tienen que cumplir con la obligación que la Regla 36.4 de Procedimiento Civil, les impone. *Meléndez González et al. v. M. Cuebas, supra*, págs. 113-114. La mencionada regla, claramente establece que "[s]i en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos** […]". (Énfasis nuestro)

-III-

Según consignamos en la exposición de hechos procesales que concluyeron con la presentación del recurso de epígrafe, como único señalamiento de error el Consejo reclama que, al atender su solicitud de sentencia sumaria, así como la moción en oposición que presentó en el caso MCMS, el foro primario incidió al incumplir con la Regla 36.4 de Procedimiento Civil, *supra,* y no establecer los hechos sobre los que no existía controversia sustancial y aquellos realmente y de buena fe controvertidos.[19]

Del texto de la resolución recurrida que más arriba transcribimos, surge que, al evaluar la moción de sentencia sumaria del Consejo, así como la oposición que frente a esta presentó MCMS, basándose en los fundamentos expuestos por este último, el foro primario concluyó que no

---

[19] Tratándose de la denegatoria de una moción dispositiva, ciertamente estamos ante una de las instancias en las que por virtud de la Regla 52.1 de Procedimiento Civil, *supra*, podrá expedirse el auto de *certiorari*.

procedía dictar sentencia sumaria. Sin embargo, su propia lectura revela que el TPI no estableció los hechos incontrovertidos. De igual forma, al leerla podemos advertir que, en su dictamen, el foro primario omitió consignar aquellos hechos que encontró de buena fe controvertidos como le exige la Regla 36.4 de Procedimiento Civil, *supra,* que haga.

A nuestro juicio, el foro primario no debió despachar la solicitud de sentencia sumaria sometida por el Consejo de la manera en que lo hizo. Por el contrario, y conforme tal cual le es ordenado por la Regla 36.4 de Procedimiento Civil, *supra*, debió señalar de forma específica los hechos esenciales y pertinentes sobre los que encontraba existía controversia e impedían dictar la sentencia sumaria peticionada. El no haberlo hecho ocasiona un fracaso a la justicia que amerita nuestra intervención, pues priva a la parte peticionaria de una determinación judicial correctamente fundamentada sobre la cual pueda recurrir en defensa de sus derechos. De la misma manera, su omisión incide en nuestra función revisora, pues especularíamos en cuanto a cuáles son los hechos materiales en controversia a los que el foro primario hacía referencia y que alegadamente impiden la resolución sumaria del caso.

Procede pues que devolvamos el caso al TPI para que evalúe de forma adecuada la moción de sentencia sumaria sometida por el Consejo, así como la oposición que frente a ella presentaron los recurridos. **Así hecho, el foro primario deberá emitir una nueva resolución en la que dará cumplimiento a las exigencias de la Regla 36 de Procedimiento Civil, *supra*.**

-IV-

Por las razones antes consignadas, expedimos el auto de *certiorari* solicitado, **revocamos** la *Resolución y Orden* recurrida y devolvemos el caso al Tribunal de Primera Instancia, para la continuación de los procedimientos conforme lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones